UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8-6-15_

IXI MOBILE (R&D) LTD. and IXI IP LLC,

Plaintiffs,

-v-

SAMSUNG ELECTRONICS CO., LTD. and
SAMSUNG ELECTRONICS AMERICA, INC.,

Defendants.

No. 14–cv–4355 (RJS)

IXI MOBILE (R&D) LTD. and IXI IP LLC,

Plaintiffs,

-v-

BLACKBERRY LIMITED and
BLACKBERRY CORPORATION,

Defendants.

No. 14–cv–4428 (RJS)

IXI MOBILE (R&D) LTD. and IXI IP LLC,

Plaintiffs,

-v-

APPLE INC.,

Defendant.

No. 14–cv–7954 (RJS)

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Now before the Court are Defendants' motions to transfer these three related patent

infringement actions to the Northern District of California pursuant to 28 U.S.C. § 1404(a). For

the reasons set forth below, the Court grants Defendants' motions to transfer.

I. Background[1]

Plaintiffs IXI Mobile (R&D) Ltd. and IXI IP LLC (collectively, "IXI") bring these three related actions against (i) Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"), (ii) BlackBerry Limited and BlackBerry Corporation (collectively, "BlackBerry"), and (iii) Apple Inc. ("Apple"), alleging infringement of three of IXI's patents under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.[2] The first entity Plaintiff, IXI Mobile (R&D) Ltd., is a developer and seller of wireless mobile devices. (No. 14–cv–4355 (RJS), Doc. No. 1 ¶ 2; No. 14–cv–4428 (RJS), Doc. No. 1 ¶ 2; No. 14–cv–7954 (RJS), Doc. No. 1 ¶ 2.) IXI Mobile (R&D) Ltd. is an Israeli corporation and, until June 2007, was headquartered in Northern California. (*Id.*; No. 14–cv–7954 (RJS), Doc. No. 30 ¶¶ 2–4.) The second entity Plaintiff, IXI IP LLC, is a New York limited liability company and a patent assertion entity that was formed in April 2014 – a little more than two months before IXI commenced the first of these actions. (No. 14–cv–4355 (RJS), Doc. No. 1 ¶ 3; No. 14–cv–4428 (RJS), Doc. No. 1 ¶ 3; No. 14–cv–7954 (RJS), Doc. Nos. 1 ¶ 3, 28 at 7, 30 ¶ 11.) On June 5, 2014, IXI IP LLC received the patents–in–suit from IXI Mobile (R&D) Ltd. and then immediately licensed the patents back to IXI Mobile (R&D) Ltd. (No. 14–cv–4355 (RJS), Doc. No. 1 ¶¶ 2–3; No. 14–cv–4428 (RJS), Doc. No. 1 ¶¶ 2–3; No. 14–cv–7954 (RJS), Doc. Nos. 1 ¶¶ 2–3, 30 ¶¶ 14–17.) At a high level of generality and as set forth in greater detail in the three Complaints, the patents–in–suit involve "mobile tethering" or hotspot technology, which enables a device "to access a wide

---

[1] For the purposes of this Opinion and Order, the Court accepts all allegations in the Complaints (No. 14–cv–4355 (RJS), Doc. No. 1; No. 14–cv–4428 (RJS), Doc. No. 1; No. 14–cv–7954 (RJS), Doc. No. 1) as true.

[2] In three joint stipulations dated May 11, 2015, the parties dismissed with prejudice all claims and counterclaims with respect to a fourth IXI patent, U.S. Patent No. 7,426,398. (No. 14–cv–4355 (RJS), Doc. No. 64; No. 14–cv–4428 (RJS), Doc. No. 70; No. 14–cv–7954 (RJS), Doc. No. 50.) IXI also initially named a third Samsung entity, Samsung Telecommunications America, LLC ("STA"), as a defendant in its Complaint, but on March 6, 2015, the parties stipulated to the dismissal, without prejudice, of all claims against STA. (No. 14–cv–4355 (RJS), Doc. No. 59.)

area network (such as the Internet) by way of a connection between the first device and a second, intermediary, device that has access to the wide area network." (No. 14–cv–4355 (RJS), Doc. No. 1 ¶ 12; No. 14–cv–4428 (RJS), Doc. No. 1 ¶ 9; No. 14–cv–7954 (RJS), Doc. No. 1 ¶ 9.) The patents–in–suit also concern technology pertaining to the remote control of mobile communication devices, including cellular telephones. (*Id.*)

On February 3, 2015, Defendants filed the instant motions to transfer these actions to the Northern District of California pursuant to 28 U.S.C. § 1404(a). (No. 14–cv–4355 (RJS), Doc. No. 44; No. 14–cv–4428 (RJS), Doc. No. 47; No. 14–cv–7954 (RJS), Doc. No. 27.) The motions were fully briefed by March 5, 2015. (No. 14–cv–4428 (RJS), Doc. No. 63; No. 14–cv–7954 (RJS), Doc. No. 45.)

## II. LEGAL STANDARD

"A district court may transfer any civil action to any other district or division where it might have been brought . . . [f]or the convenience of parties and witnesses, in the interest of justice . . . ." 28 U.S.C. § 1404(a). For a motion to transfer venue, the burden is on the moving party to show by "clear and convincing evidence" that transfer is proper. *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 18 (S.D.N.Y. 2012) (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am. Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010)).

As the statute makes clear, Defendants must first show that the instant actions could have been brought originally in the transferee district. *Whitehaus Collection v. Barclays Prods., Ltd.*, No. 11–cv–217 (LBS), 2011 WL 4036097, at *1 (S.D.N.Y. Aug. 29, 2011). Under 28 U.S.C. § 1391(b)(2), venue may be laid in any judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred." The parties do not dispute that these actions could have been brought in the Northern District of California, the district where Apple is

3

headquartered (No. 14–cv–7954 (RJS), Doc. No. 29 ¶ 3), BlackBerry has numerous offices and executives (No. 14–cv–4428 (RJS), Doc. No. 49 ¶ 8), and the supplier of the Android operating system – the site of much of the allegedly infringing technology in Samsung's devices – is headquartered (No. 14–cv–4355 (RJS), Doc. Nos. 45 at 2, 46–1 ¶ 9). Indeed, IXI's counsel has admitted that "[t]here's absolutely no dispute" that the Northern District of California would be an appropriate venue for each of these actions. (No. 14–cv–7954 (RJS), Doc. No. 30–1 at 99, Ex. S at 5:15.)

Having resolved that threshold question, the Court must then take into account the convenience of the parties and witnesses and the interest of justice. "District courts have broad discretion" in making these determinations. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *see also In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the district court" (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988))). In exercising their discretion under Section 1404(a), courts are generally guided by several non-dispositive factors, including:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*France Telecom S.A. v. Marvell Semiconductor, Inc.*, No. 12–cv–4986 (JSR), 2012 WL 6808527, at *1 (S.D.N.Y. Dec. 28, 2012) (quoting *Tomita Techs. USA, LLC v. Nintendo Co.*, 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011)); *see also N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112. The Court will address each of these factors in turn.

4

III. DISCUSSION

A. Convenience of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Whitehaus Collection*, 2011 WL 4036097, at *4 (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)). Among the various categories of witnesses, the convenience of non-party witnesses is weighted more heavily than that of party witnesses. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (citing *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)). Additionally, "[w]hen weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *Millennium, L.P. v. Hyland Software, Inc.*, No. 03–cv–3900 (DC), 2003 WL 22928644, at *3 (S.D.N.Y. Dec. 10, 2003) (citations omitted). As numerous courts have recognized, in patent infringement suits, "[t]he key witnesses[] . . . are those officers and employees who are involved in the design, production, and sale of the products." *Id.*; *see also Int'l Sec. Exch., LLC v. Chi. Bd. Options Exch. Inc.*, No. 06–cv–13445 (RMB) (THK), 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007) ("In the context of a patent infringement suit, a court should give particular consideration to individuals who can testify about the technology of the allegedly infringing inventions."), *report and recommendation adopted by* 2007 WL 2319128 (S.D.N.Y. Aug. 9, 2007); *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) ("The key issues in a patent infringement suit involve the technology of the inventions claimed in the patents–in–suit.").

Here, witness convenience overwhelmingly favors transferring these actions to the Northern District of California. It is telling that all three Defendants – Apple, BlackBerry, and

Samsung – are unaware of a single party or non-party witness located in New York with knowledge of the design, development, or marketing of the relevant technologies. (No. 14–cv–7954 (RJS), Doc. No. 29 ¶¶ 5, 7–10, 12; No. 14–cv–4428 (RJS), Doc. No. 49 ¶¶ 4, 7–8; No. 14–cv–4355 (RJS), Doc. No. 46–1 ¶ 8.) Moreover, even IXI is unable to name a single party or non-party witness located in or close to New York with knowledge of the design, development, or marketing of the relevant technologies. Specifically, IXI identifies merely two witnesses potentially located near New York – Steve Pederson from IXI IP LLC and an unnamed third-party witness from Verizon Communications, Inc. (No. 14–cv–7954 (RJS), Doc. No. 31 at 15–16, 18–19, Doc. No. 34) – but their testimony undisputedly would not concern the technology of the allegedly infringing inventions. Thus, neither is a key witness, and the presence of these individuals is entitled to barely any weight.

In marked contrast, an abundance of key party and non-party witnesses reside within or in close proximity to the Northern District of California. For example, every single one of Apple's likely party witnesses with knowledge of the design, development, and marketing of the relevant technologies resides and works within the Northern District of California. (No. 14–cv–7954 (RJS), Doc. No. 29 ¶¶ 5, 12.) Specifically, Apple has identified at least seven key party witnesses – Delziel Fernandes, Sergey Sitnikov, Andreas Wolf, Timm Hannon, Sean Kelly, Michael Chu, and Steve Gedikian – who all (1) work at Apple's Cupertino, California headquarters in the Northern District of California, and (2) live within the Northern District of California. (*Id.* ¶ 12.) Notably, all of these employees are "key" witnesses, *Millennium, L.P.*, 2003 WL 22928644, at *3, since all but Mr. Gedikian are engineers responsible for and possess knowledge of the technologies at issue, and Mr. Gedikian was responsible for marketing the allegedly infringing technologies (No. 14–cv–7954 (RJS), Doc. No. 29 ¶ 12). In addition,

6

BlackBerry's Senior Technical Director, Michael Rybak – a party witness with knowledge of the relevant technologies, including prior art to the patents–in–suit – works in BlackBerry's Pleasanton, California office, which, like Apple's headquarters, is located in the Northern District of California. (No. 14–cv–4428 (RJS), Doc. No. 55 ¶ 2.)

Similarly, with respect to non-party witnesses, three of the six inventors of the patents identified in the Complaints reside in the Northern District of California. (No. 14–cv–7954 (RJS), Doc. No. 31 at 17.) A fourth inventor lives in Seattle, Washington, and the other two inventors are located in Israel. (*Id.*) Specifically, inventors Hans Reisgies, Amit Haller, and Peter Fornell all reside in the Northern District of California. (*Id.*) Furthermore, several potential non-party witnesses possessing knowledge of relevant prior art – employees of Santa Clara, California-based Agilent Technologies who, in a December 2000 patent application, disclosed similar functionality as described in several of the patents–in–suit – likely reside within the Northern District of California. (No. 14–cv–7954 (RJS), Doc. No. 30 ¶ 18.) Additionally, Samsung's non-party witnesses likely to testify about the Android operating system – the site of much of the allegedly infringing technology in Samsung's devices – are likely located within the Northern District of California in Mountain View, California. (No. 14–cv–4355 (RJS), Doc. Nos. 45 at 2, 46–1 ¶ 9.) Finally, the majority of BlackBerry's current models incorporate Wi-Fi and Bluetooth chips designed and manufactured by Broadcom Corporation, which is based in Irvine, California, within the neighboring Central District of California. (No. 14–cv–4428 (RJS), Doc. Nos. 48 at 2, 54 at 3.) Blackberry has averred that two likely witnesses, Clint Brown and Patrick Zhang – the two Broadcom employees with whom BlackBerry's personnel primarily interact with respect to the allegedly infringing technology – are also located in Irvine, California. (*Id.*)

Put simply, the geographic distribution of the key witnesses noted above emphatically supports transfer of these actions to the Northern District of California. Obviously, transferring these actions will significantly reduce the collective flight time of the key witnesses. By contrast, if these actions were to proceed in the Southern District of New York, four of the inventors, Apple's seven party witnesses, BlackBerry's Senior Technical Director, the two Broadcom employees, the Agilent Technologies employees, and the other non-party witnesses would each need to travel from the west coast to New York. In any event, regardless of whether these actions proceed in New York or California, the remaining two inventors will still need to travel internationally from Israel to the United States. (No. 14–cv–7954 (RJS), Doc. Nos. 28 at 12, 30 ¶ 21); *see also Emblaze Ltd. v. Apple Inc.*, No. 10–cv–5713 (PKC), 2011 WL 724275, at *2 (S.D.N.Y. Feb. 25, 2011) (comparing, as here, travel times from Israel to New York and from Israel to San Francisco and finding that "[t]he difference in degree of inconvenience . . . is not very substantial," and, thus, transferring an Israeli plaintiff's action from the Southern District of New York to the Northern District of California); *Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118 (S.D.N.Y. 2005) (transferring a case from New York to California where, similarly, "the hardship of travel on defendant will be eliminated, while the hardship of travel on plaintiff will only slightly be increased, since she would have to travel from London regardless of where the case is decided").

Accordingly, in light of the paramount importance of testimony concerning the technology at issue, the Court finds that the convenience of witnesses strongly favors transfer of these actions to the Northern District of California.

B.  Location of Relevant Documents and Ease of Access to Sources of Proof

Multiple judges in this District have found that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weigh in favor of transfer to that location." *Millennium, L.P.*, 2003 WL 22928644, at \*4 (citing *Coloplast A/S v. Amoena Corp.*, No. 92–cv–3432 (MBM), 1992 WL 346359, at \*2 (S.D.N.Y. Nov. 18, 1992); *Boreal Laser Inc. v. Coherent, Inc.*, No. 91–cv–5863 (MBM), 1992 WL 9375, at \*2 (S.D.N.Y. Jan. 13, 1992)).  Applying this standard supports transferring these actions to the Northern District of California since Apple, BlackBerry, and Samsung – the accused infringers – all are unaware of *any* relevant documents in New York (No. 14–cv–7954 (RJS), Doc. No. 29 ¶ 11; No. 14–cv–4428 (RJS), Doc. No. 49 ¶ 9; No. 14–cv–4355 (RJS), Doc. No. 46–1 ¶ 8), whereas the vast majority of Apple's relevant documents are located in or near Apple's Cupertino, California headquarters within the Northern District of California (No. 14–cv–7954 (RJS), Doc. No. 29 ¶ 6) and documents relevant to the Android operating system – the site of much of the allegedly infringing technology in Samsung's devices – are likely located within the Northern District of California in Mountain View, California  (No. 14–cv–4355 (RJS), Doc. Nos. 45 at 2, 46–1 ¶ 9).  IXI, for its part, offers no evidence that any of its documents located within New York – as opposed to those retained in Israel (No. 14–cv–7954 (RJS), Doc. No. 33 ¶ 8) – concern the design and development of the technology at issue.  *See Coloplast A/S*, 1992 WL 346359, at \*2 (noting the relevance of defendant's business records pertaining to the design, manufacture, and sale of its allegedly infringing products).

Nonetheless, this factor does not heavily support transfer since, in light of technological progress and advances in electronic discovery, an increasing number of courts have explained

that "[t]he location of relevant documents is largely a neutral factor in today's world of . . . scanning[] and emailing documents." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007); *see also Tomita Techs. USA, LLC*, 818 F. Supp. 2d at 772 (noting that one party "almost certainly will not physically ship documents that relate to the design process from Japan to the trial court. Instead, it will scan those documents onto a computer, producing them with the click of a mouse"); *TouchTunes Music Corp. v. Rowe Int'l Corp.*, 676 F. Supp. 2d 169, 174 (S.D.N.Y. 2009) (finding that, in the digital age, "the location of the documents is not a significant factor in the convenience analysis" (citations omitted)); *Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.*, No. 06–cv–395 (HB), 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006) (observing that "the burden on the party transporting documents is arguably minimal given the services (e.g. electronic production, overnight courier service) available to lawyers today"). Thus, since nothing in the parties' submissions indicates that production of documents would pose a significant obstacle to adjudication in either New York or California, the Court determines that this factor is neutral as to transfer and, at most, only minimally favors transfer.

## C. Convenience of Parties

Unsurprisingly, "[t]he convenience of the parties is often connected to the convenience of their respective witnesses." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 549–50 (S.D.N.Y. 2008). Therefore, while simply shifting inconvenience from one party to another does not support transfer, it is clear that when the convenience of witnesses weighs in one direction, the convenience of the parties will likely weigh in that direction as well. *See id.* at 550 (citing *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994)). As discussed above, the convenience of the witnesses heavily favors transfer to the Northern District of California, so this

10

factor likewise favors transfer to that District. Nevertheless, the fact that Defendants are corporations with significant operations in New York, coupled with the fact that IXI IP LLC is incorporated in New York, suggests that this factor does not overwhelmingly favor transfer.

### D. Locus of Operative Facts

"The location of operative events is a primary factor in determining a § 1404(a) motion to transfer." *Whitehaus Collection*, 2011 WL 4036097, at \*2 (citing *Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 377 (S.D.N.Y. 2002)). As many courts have recognized, "[i]n patent infringement cases, the locus of operative facts is where the allegedly infringing product was designed, developed, and managed." *Millennium, L.P.*, 2003 WL 22928644, at \*5 (citing *Lighting World, Inc. v. Birchwood Lighting, Inc.*, No. 01–cv–4751 (BSJ), 2001 WL 1242277, at \*3–4 (S.D.N.Y. Oct. 16, 2001)); *see also Wechsler v. Macke Int'l Trade, Inc.*, No. 99–cv–5725 (AGS), 1999 WL 1261251, at \*4 (S.D.N.Y. Dec. 27, 1999); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998)). Other courts within this District have concluded that the locus may also include the location where the patented invention was developed. *See, e.g., France Telecom S.A.*, 2012 WL 6808527, at \*1 (noting that "[i]n patent cases, the locus of the operative facts generally lies either where the patented invention was developed, or where the allegedly infringing product was designed, developed, and produced" (citing *Cirrex Sys. LLC v. InfraReDx, Inc.*, No. 10–cv–3952 (DLC), 2010 WL 3431165, at \*3 (S.D.N.Y. Aug. 31, 2010))).

Under either framework, it is clear that the Northern District of California is a locus of operative facts and the Southern District of New York is not. Here, there can be no dispute that many of the allegedly infringing products – including *all* applicable Apple products and, at a minimum, some of the BlackBerry and Samsung products – were designed, developed, and

11

managed in the Northern District of California, whereas no such conduct occurred in the Southern District of New York. (No. 14–cv–7954 (RJS), Doc. No. 28 at 11–13, 15–16, Doc. No. 29 ¶¶ 5, 7–10, 12, Doc. No. 35 at 6; No. 14–cv–4428 (RJS), Doc. No. 48 at 2, Doc. No. 49 ¶¶ 4, 7–8, Doc. No. 54 at 2–3; No. 14–cv–4355 (RJS), Doc. No. 45 at 2, Doc. No. 46–1 ¶¶ 8–9.) Moreover, since the technology patented by IXI was developed in the Northern District of California as well as in Israel, but not in the Southern District of New York (No. 14–cv–7954 (RJS), Doc. Nos. 28 at 16, 31 at 18), the expanded definition of locus relied on by Judge Rakoff in *France Telecom S.A.* and Judge Cote in *Cirrex Sys. LLC* – that is, the definition that includes the location where the patented invention was developed – further supports transfer. Finally, the mere fact that some operative facts in these actions occurred in Israel does not counsel against transfer. Indeed, courts in this District routinely transfer actions where, as here, there are multiple loci of operations, many of the operative facts transpired in the transferee district, and no significant operative facts took place in the transferor district. *See, e.g., France Telecom S.A.*, 2012 WL 6808527, at *1–2 (granting transfer where the "operative facts appear to have occurred in several different locales around the world," but "the Northern District of California is the locus of many of the operative facts" and "no significant operative facts appear to have occurred in New York"); *Serconet, Ltd. v. Netgear, Inc.*, No. 06–cv–5026 (JSR), 2006 WL 2109462, at *2 (S.D.N.Y. July 27, 2006) (same). Accordingly, the Court determines that this factor weighs heavily in favor of transferring these actions to the Northern District of California.

E.  Availability of Process to Compel the Attendance of Unwilling Witnesses

In evaluating motions to transfer, courts also consider "the availability of process to compel the testimony of unwilling witnesses." *Whitehaus Collection*, 2011 WL 4036097, at *5. However, if neither party submits evidence suggesting that a witness will be unwilling to testify

voluntarily, the availability of process to compel testimony is largely irrelevant to the transfer analysis. *See Pace v. Quintanilla*, No. 13–cv–91 (RJS), 2013 WL 5405563, at \*4 (S.D.N.Y. Sept. 23, 2013) (citing *Whitehaus Collection*, 2011 WL 4036097, at \*5). Because no party here has proffered any materials indicating that any of the witnesses will not testify in New York or California voluntarily, this factor is neutral as to the § 1404(a) analysis.

### F.   Relative Means of the Parties

An additional factor courts take into account when deciding transfer motions is "the relative means of the parties to bring suit in either forum." *Whitehaus Collection*, 2011 WL 4036097, at \*6. But where, as here, all parties are corporations, "this factor is not entitled to great weight." *Bionx Implants, Inc. v. Biomet, Inc.*, No. 99–cv–740 (WHP), 1999 WL 342306, at \*5 (S.D.N.Y. May 27, 1999) (citing *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998)).   Furthermore, "[a] party arguing against or for transfer because of inadequate means must offer documentation to show that transfer (or the lack thereof) would be unduly burdensome to [its] finances." *MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*, No. 03–cv–7157 (WHP), 2004 WL 1368299, at \*7 (S.D.N.Y. June 16, 2004) (citations and internal quotation marks omitted).   To be sure, IXI's moving papers refer to Apple's and Samsung's substantial financial resources, while conceding that BlackBerry has had "recent financial struggles." (No. 14–cv–7954 (RJS), Doc. No. 31 at 27; No. 14–cv–4428 (RJS), Doc. No. 50 at 27; No. 14–cv–4355 (RJS), Doc. No. 47 at 27.)   Nevertheless, these assertions are of no moment since IXI has provided no documentation to suggest that transfer to the Northern District of California would be "unduly burdensome" to *its* finances. *MasterCard Int'l, Inc.*, 2004 WL 1368299, at \*7. Moreover, IXI's argument that the Southern District of New York is more convenient than the Northern District of California because IXI's "chosen counsel has offices in New York and the

13

principal attorneys working on the matter are located in Philadelphia, PA" (No. 14–cv–7954 (RJS), Doc. No. 31 at 13) is equally unpersuasive since any inconvenience to IXI's lawyers is "irrelevant." *Cirrex Sys. LLC*, 2010 WL 3431165, at \*3 (holding that "any inconvenience to [plaintiff's] New York-based counsel is irrelevant"); *see also Cressman v. United Air Lines, Inc*, 158 F. Supp. 404, 407 (S.D.N.Y. 1958) (finding that any inconvenience to counsel "is not a relevant consideration"). Accordingly, the Court determines that this factor is neutral.

## G. Forum's Familiarity with the Governing Law

"Familiarity with the governing law as a factor in determining transfer of venue is 'generally given little weight in federal courts.'" *MASTR Asset Backed Sec. Trust 2007–WMC1, ex rel. U.S. Bank Nat'l Ass'n v. WMC Mort. LLC*, 880 F. Supp. 2d 418, 423 (S.D.N.Y. 2012) (quoting *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006)). More specifically, "[p]atent law is federal law and any district court may handle a patent case with equal skill." *Wechsler v. Macke Int'l Trade, Inc.*, No. 99–cv–5725 (AGS), 1999 WL 1261251, at \*9 (S.D.N.Y. Dec. 27, 1999) (citations and internal quotation marks omitted). Therefore, the Court determines that this relatively unimportant factor is also neutral.

## H. Weight Accorded the Plaintiffs' Choice of Forum

A "plaintiff's choice of forum is presumptively entitled to substantial deference." *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004) (citation omitted). However, the weight afforded to a plaintiff's choice is diminished "where the operative facts lack a meaningful connection to the chosen forum." *GlaxoSmithKline Biologicals, S.A., v. Hospira Worldwide, Inc.*, No. 13–cv–1395 (PKC), 2013 WL 2244315, at \*3 (S.D.N.Y. May 21, 2013) (citation omitted); *see also Serconet, Ltd.*, 2006 WL 2109462, at \*2 (concluding that "where, as here, the other factors all favor transfer and the connection between the case and the Southern District of

14

New York is virtually nonexistent, plaintiff's choice of forum is insufficient to prevent transfer"). Here, the Court has little difficulty concluding that the operative facts in these actions lack a meaningful connection to the Southern District of New York. As noted above, the Northern District of California – where much of the accused products were designed, developed, and managed and where, along with Israel, the patented technology was invented – is clearly a locus of operative facts, whereas the Southern District of New York – where *none* of those things occurred – is not.

As a result, IXI is left to rely, almost exclusively, on the incorporation of IXI IP LLC in New York – notwithstanding the fact that it was formed only a couple of months prior to commencing these actions. Indeed, Apple has convincingly questioned the strength of IXI IP LLC's connection to the Southern District of New York, asserting that it "has found nothing in the public domain or on the company website that suggests IXI IP has any business operations other than patent assertion activities." (No. 14–cv–7954 (RJS), Doc. No. 28 at 7.) In the Declaration of Elizabeth A. Gillen, Apple further challenges the extensiveness of IXI IP LLC's operations in the Southern District of New York:

> On November 26, 2014, [Ms. Gillen] sought to visit IXI IP, LLC's office at the address listed on its website: "Chrysler Building, 405 Lexington Avenue, Seventh Floor, Suite 726, New York, NY 10174." . . . . [Ms. Gillen] was unable to locate any company named "IXI IP, LLC" or any similarly named entity using the Chrysler Building directory in the lobby. [Ms. Gillen] requested more information at the lobby helpdesk and was informed that a number of law firms and companies occupy the seventh floor of the Chrysler Building, none of which are named IXI IP, LLC.

(No. 14–cv–7954 (RJS), Doc. No. 30 ¶ 13.) Conspicuously, IXI does not offer much to rebut Apple's arguments, merely noting without elaboration that "IXI IP uses this office to conduct meetings and other business in New York City." (No. 14–cv–7954 (RJS), Doc. No. 34 ¶ 1.) Thus, based on the current record, even IXI does not appear to have robust ties to this District.

Accordingly, since the operative facts lack a meaningful connection to the Southern District of New York, the weight afforded to Plaintiff's choice of forum is diminished and insufficient to prevent transfer of these actions.

### I. Trial Efficiency and the Interests of Justice

Finally, courts often consider trial efficiency and the interests of justice when evaluating a transfer motion. *See, e.g.*, *Pace*, 2013 WL 5405563, at *5 (citing *Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003)); *Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08–cv–03710 (PGG), 2009 WL 440381, at *3 (S.D.N.Y. Feb. 18, 2009). However, any concern that transferring these cases would undermine judicial economy – because it would require a new court to familiarize itself with the facts of the cases – is not particularly present here, since: (1) the Court has not yet developed an expertise in the underlying technology and patents; (2) the only fully-briefed matters before this Court are Defendants' instant motions to transfer; (3) fact discovery will proceed for several more months (No. 14–cv–7954 (RJS), Doc. No. 22 at 2); and, in any event, (4) the parties will not be worse off after the transfer since the discovery and other activities already undertaken will be as germane in the Northern District of California as in the Southern District of New York. Therefore, it would not materially delay resolution of these actions to transfer them to the Northern District of California.

Transferring these actions would, however, further the interests of justice. The Northern District of California is clearly the forum with the most meaningful connection to the central facts of these cases. As noted above, the locus of operative facts and convenience of both party and non-party witnesses are compelling factors that powerfully weigh in favor of transferring these actions, and the limited deference afforded to Plaintiffs' choice of forum – especially when the operative facts lack a meaningful connection to the Southern District of New York – is

clearly insufficient to overcome that weight. Where, as here, the "natural focus of [the] litigation is [the transferee district]," granting transfer furthers the interests of justice. *Delarosa v. Holiday Inn*, No. 99–cv–2873 (RWS), 2000 WL 648615, at *5 (S.D.N.Y. May 19, 2000). Finally, in light of the fact that the Court is transferring all three actions, concerns of judicial economy and the avoidance of inconsistent rulings are not present, since there will still be a single forum adjudicating these actions following transfer. Accordingly, the interests of justice also militate in favor of transfer.

IV. CONCLUSION

Weighing the factors set forth above and having considered all the facts and circumstances before it, the Court determines that Defendants have demonstrated by clear and convincing evidence that transfer of these three actions is appropriate. Accordingly, IT IS HEREBY ORDERED THAT Defendants' motions to transfer these actions to the Northern District of California are GRANTED. The Clerk of the Court is respectfully directed to terminate the motions pending at docket entries 44 in case number 14–cv–4355 (RJS), 47 in case number 14–cv–4428 (RJS), and 27 in case number 14–cv–7954 (RJS), and to close these cases.

SO ORDERED.

DATED:      August 6, 2015
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

17
