**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Haywood S. Gilliam, Jr., Judge

| | |
|---|---|
| IXI MOBILE (R&D) LTD, ET AL., )<br>)<br>  Plaintiffs, )<br>)<br>VS. )<br>)<br>SAMSUNG ELECTRONICS CO., LTD., )<br>ET AL., )<br>)<br>  Defendants. )<br>_____) | **NO. CV 15-3752-HSG** |
| IXI MOBILE (R&D) LTD., ET AL., )<br>)<br>  Plaintiffs, )<br>)<br>VS. )<br>)<br>BLACKBERRY LIMITED, ET AL., )<br>)<br>  Defendants. )<br>_____) | **NO. CV 15-3754-HSG** |
| IXI MOBILE (R&D) LTD., ET AL.,<br>)<br>  Plaintiffs, )<br>)<br>VS. )<br>)<br>APPLE, INC., )<br>)<br>  Defendant. )<br>_____) | **NO. CV 15-3755-HSG** |

San Francisco, California
Thursday, November 5, 2015
<u>TRANSCRIPT OF PROCEEDINGS</u>

Reported by:  Pamela A. Batalo, CSR 3593, RMR, FCRR
              Official Reporter

**APPEARANCES**:

For Plaintiff:
      DILWORTH PAXSON, LLP
      1500 Market Street - Suite 3500E
      Philadelphia, PA  19102
   **BY:**  **THOMAS S. BIEMER, ATTORNEY AT LAW**

      HOPKINS & CARLEY
      70 South First Street
      San Jose, California  95113
   **BY:**  **JOHN V. PICONE, III, ATTORNEY AT LAW**

For Defendant Samsung Electronics Co., Ltd.:
      KIRKLAND & ELLIS, LLP
      601 Lexington Avenue
      New York, NY  10022
   **BY:**  **TODD M. FRIEDMAN, ATTORNET AT LAW**

For Defendant BlackBerry Limited:
      MCGUIRE WOODS LLP
      2000 McKinney Avenue - Suite 1400
      Dallas, TX  75201
   **BY:**  **JASON W. COOK, ATTORNEY AT LAW**

For Defendant Apple, Inc:
      SIMPSON, THACHER & BARTLETT
      2475 Hanover Street
      Palo Alto, CA  94304
   **BY:**  **HARRISON J. FRAHN, IV, ATTORNEY AT LAW**
      **ELIZABETH A. GILLEN, ATTORNEY AT LAW**
      **PATRICK E. KING, ATTORNEY AT LAW**

| | |
|---|---|
| 1 | **Thursday - November 5, 2015**                              **2:08 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:** We're calling CV 15-3752-HSG, IXI Mobile |
| 5 | (R&D) Ltd., et al., vs. Samsung Electronics Co., Ltd., et al; |
| 6 | CV 15-3754-HSG, IXI Mobile (R&D) Ltd., et al., vs. BlackBerry |
| 7 | Limited, et al; and CV 15-3755-HSG, IXI Mobile (R&D) Ltd., |
| 8 | et al., vs. Apple, Inc. |
| 9 | Please step forward and state your appearances for the |
| 10 | record, please. |
| 11 | **MR. BIEMER:** Good afternoon, Your Honor -- |
| 12 | **THE CLERK:** You should come to the podium. |
| 13 | **MR. BIEMER:** Good afternoon, Your Honor. Tom Biemer |
| 14 | on behalf of the plaintiffs, IXI Mobile or IXI IP. |
| 15 | **THE COURT:** Good afternoon. |
| 16 | **MR. PICONE:** Good afternoon, Your Honor. John Picone, |
| 17 | Hopkins & Carley, on behalf of the plaintiff. |
| 18 | **THE COURT:** Good afternoon. |
| 19 | **MR. FRAHN:** Good afternoon, Your Honor. Buzz Frahn of |
| 20 | Simpson Thacher for defendant Apple, and I'm joined by my |
| 21 | partner, Patrick King, and Ms. Liz Gillen, one of our |
| 22 | associates, and then my client, Jessica Hannah, is also here in |
| 23 | the courtroom. |
| 24 | **THE COURT:** Good afternoon. |
| 25 | **MR. FRIEDMAN:** Good afternoon, Your Honor. Tom |

1  Friedman from Kirkland & Ellis on behalf of Samsung.
2          **THE COURT:**  Good afternoon, counsel.
3          **MR. COOK:**  Good afternoon, Your Honor.  My name is
4  Jason Cook.  I'm with McGuire Woods for defendant BlackBerry,
5  and with me is Tony Kim, in-house counsel of Blackberry.
6          **THE COURT:**  Good afternoon.
7      All right.  So we're here primarily for the hearing on the
8  motion to stay this case pending IPR.  I'll tell counsel that
9  my pretty strong inclination is to grant the stay, but the red
10 flag that I noticed in the papers that I think needs some
11 discussion is I saw that BlackBerry is agreeing, in essence, to
12 a partial estoppel effect but not the full estoppel effect that
13 would apply if they were in fact themselves filing for IPR.
14     That causes me some significant pause because the premise
15 of staying pending IPR is that there is an opportunity at least
16 for a full resolution of a number of issues and there is the
17 effect of preclusion of issues not just that are raised but
18 that could be raised.
19     And so my leaning is that any stay here would be
20 conditional on BlackBerry's agreement to agree to the full
21 scope of estoppel that would apply were it actually filing an
22 IPR petition.
23     So that said, I should probably hear from counsel for
24 BlackBerry and then counsel for plaintiffs can respond.
25         **MR. COOK:**  This is Jason Cook with McGuire Woods for

1   BlackBerry.  Thank you, Your Honor.
2       As you correctly pointed out, BlackBerry did not file the
3   IPRs against the three patents in this case.  In fact,
4   BlackBerry didn't participate in the IPRs in any way.  It
5   didn't have any say in the prior art that was asserted in the
6   IPRs.  It didn't review the IPR petitions prior to the filing
7   of the IPR petitions.  It didn't contribute in any way to the
8   preparation of the IPR petitions.  And it has no control over
9   any aspect of the IPR petitions.
10      Apple and Samsung, they can control the arguments that are
11  made in the IPR.  They got to pick the prior art.  They got to
12  wade through the prior art, select the prior art in the IPR
13  petitions.  They get to take positions on claim construction.
14  Their voices are essentially heard at the PTAB, and BlackBerry
15  doesn't have that opportunity.
16      Because of that, it would be basically fundamentally
17  unfair to hold BlackBerry to the full estoppel effect that
18  Apple and Samsung get.
19          **THE COURT:**  Regardless of your perspective that that
20  would be fundamentally unfair, do you agree that it's within my
21  power to grant a stay on that condition, even if you don't
22  agree to it?
23          **MR. COOK:**  Absolutely, Your Honor.  That is absolutely
24  within your power.
25      But I would like to point out one particular case that we

1   pointed to in the briefing.  This is *Intellectual Ventures vs.*
2   *Huntington Bancshares, Inc*.  In that case, there were four or
3   five defendants that Intellectual Ventures had sued.  Now, this
4   is admittedly not a precedential opinion, Your Honor.  It's a
5   case coming out of the Southern District of Ohio.
6        Intellectual Ventures sued five different defendants that
7   each filed a motion to stay pending an IPR that was not filed
8   by any of them but filed by IBM.  They filed the motion to stay
9   prior to the institution of the IPR.
10       And Intellectual Ventures in that case made the exact same
11  argument that IXI is making here, specifically that the stay
12  wouldn't simplify the issues because none of the defendants in
13  that case were subject to the full estoppel or any estoppel.
14       The Court found that the IPRs would simplify the issues in
15  that case, regardless of the lack of estoppel.  It said -- and
16  I'm quoting -- "Should the PTAB conclude that the patents in
17  suit are invalid based on the arguments and evidence advanced
18  during the IPR proceeding, then estoppel becomes irrelevant."
19        Your Honor, if any of the asserted claims of any of the
20  three patents are ruled invalid, it certainly simplifies the
21  issues in this case, regardless of BlackBerry's estoppel.
22       Second, the IPRs themselves create sort of an extended
23  prosecution history for all three of the patents.  There are
24  going to be statements made by the patentee, by the PTAB about
25  the scope of the patents, claim construction, the scope of the

1  prior art, points of novelty of each individual patent, and all
2  of that stuff needs to be addressed and is relevant to our case
3  and could help simplify the issues in our case, regardless of
4  BlackBerry's estoppel.
5       **THE COURT:** Again, I'm just trying figure out the
6  mechanics. If I, as I stated, am inclined to impose that
7  condition, is it your position that you would have to agree to
8  that or could I say that the stay imposes this additional
9  estoppel on your client beyond what you appear to be willing to
10 agree to?
11      **MR. COOK:** I think BlackBerry would have to consent in
12 that circumstance, Your Honor, to be fully estopped, not being
13 a party to the IPR.
14      **THE COURT:** So I think that's the question for you, is
15 that it's not likely to be stayed. It's very unlikely to be
16 stayed if you maintain the estoppel reservation that you've now
17 stated.
18      **MR. COOK:** Your Honor, would you grant me a few
19 minutes to consult with my client?
20      **THE COURT:** Yes.
21    Why don't we move to the next matter, and we can recall
22 this.
23              (Other calendar items called)
24      **THE CLERK:** We are recalling the matter of
25 C 15-3752, C 15-3754, and C 15-3755.

1     All parties previously identified are back in court,
2  Your Honor.
3             **THE COURT:** Mr. Cook, have you had a chance to talk it
4  over?
5             **MR. COOK:** Yes, I have, Your Honor.  BlackBerry will
6  agree to be bound by the same estoppel as Samsung and Apple.
7             **THE COURT:** All right.
8     And so, Mr. Biemer, would you like to be heard?
9             **MR. BIEMER:** Briefly, Your Honor.
10    I understand Your Honor is leaning towards issuing a stay,
11 strongly leaning towards issuing a stay, and in our papers, we
12 had pointed out that there has been a recent change in the way
13 courts look at this issue, and we cite to Federal Circuit Judge
14 Bryson sitting by designation in the Eastern District of Texas
15 saying that the courts recently are denying these motions for
16 stay when the IPR is only pending and it hasn't been granted
17 yet.
18    And, Your Honor, that was specifically recognized by
19 Judge Chen in this district, in the Northern District of
20 California recently in the *Netlist* case who specifically
21 referenced Judge Bryson's statement that that is the trend and
22 recognized that trend.  Because at this point, when we don't
23 know whether or not the PTAB is going to take up the IPR, it's
24 speculative.
25    And unlike the cases that Your Honor has ruled on in the

1     past -- the *Finjan* case, the *DSS* case and the *Security People*
2     case -- here as a result of the timing with the transfer and
3     the motion for the stay, my client has suffered actual
4     prejudice at the tactical level, and the reason is my client
5     has filed their claim construction brief.  My client's expert
6     has been deposed on claim construction.
7          And in this case, it's not just that they waited --
8     Samsung waited until exactly one day before the deadline.  I
9     understand Your Honor has rejected that argument in the past as
10    a dilatory tactic, but here you also have the timing of the
11    stay request itself.
12         The IPRs were filed and then they waited two weeks until
13    July 2nd to send a pre-motion letter in to the Southern
14    District of New York, Judge Sullivan, knowing that under
15    Judge Sullivan's rules, our response to the pre-motion letter
16    was due July 8th, the very same day that our claim construction
17    brief was due.
18         Now, they knew they were filing these IPRs for months.
19    They're significant documents, and they never gave us any
20    indication that they were going to file for the stay.
21         Then right before the holiday weekend, they file a
22    two-and-a-half-page pre-motion letter with the judge knowing
23    that they're going to get a free look at what we're going to do
24    on claim construction.
25         And here, Your Honor, unlike those other cases, the short

1   window between when the IPR is going to be decided is
2   January 2nd and today can actually cure that prejudice because
3   they could file their claim construction brief and we can
4   depose their expert.  Then we'll be on the same tactical
5   playing field that they are.
6       And during that time, there will be almost no court
7   resources used under the case management order we proposed
8   because the Markman hearing isn't going to be after we get a
9   ruling on the IPR.
10      So unlike those cases that Your Honor was facing before,
11  here we have actual tactical prejudice as a result of the delay
12  and the delay in requesting the stay until after they got a
13  free look at what we were going to do.  Those are the big
14  distinctions between the cases Your Honor has previously
15  decided.  And when you combine that with the modern trend that
16  we cite from --
17          **THE COURT:**  That's not a trend in this court.
18          **MR. BIEMER:**  I realize that, Your Honor.  But
19  Your Honor cites to a 2011 case, the *Pragmatus* case, for courts
20  that have granted an -- granted a stay when an IPR is merely
21  pending and hasn't been granted, and at the time when the
22  *Pragmatus* case was decided, that was the way courts were going.
23      And what we're pointing out -- and we're just pointing it
24  out, Your Honor, is that Judge Bryson in the *Trover* case
25  specifically said that the majority of the courts are now

1  rejecting this, and although the defendants say that's not
2  recognized in this Court, Judge Chen did recognize that in the
3  *Netlist* court. He actually cited to Judge Bryson in that
4  opinion.
5      **THE COURT:** Did Judge Bryson break out the statistics
6  in the Northern District of California?
7      **MR. BIEMER:** No, Your Honor, he did not. He was
8  dealing -- he actually dealt with the statistics in the Eastern
9  District of Texas because that's where he was, but he did
10 collect cases, he did specifically cite the cases in the
11 Northern District of California where they were -- I believe it
12 was the *Sage Electronics* case that he specifically cited to,
13 and as I said, Your Honor, two recent cases, one involving
14 Apple, *Aylus Networks vs. Apple* specifically referenced this,
15 as did the *Netlist* case.
16    I understand Your Honor has ruled recently three times,
17 and as I explained to my client, I feel like I'm on the
18 Dolittle Raid a little bit here. I understand you have done
19 it, but those are our arguments that distinguish that,
20 Your Honor.
21     **THE COURT:** All right. I appreciate your position.
22    All right. So I'll take the motion to stay under
23 submission, and I would expect to issue a ruling on that
24 relatively quickly.
25    Just with regard to the ADR component of the case, I

1   thought it made some sense to talk about that while I have you
2   all here.
3       As I understand it, there is some divergence of
4   perspective as to what would make the most sense, magistrate
5   judge or mediation.  And I guess the global question is, A,
6   what do the parties think in terms of consensus, if there is a
7   consensus, as to what sort of ADR would make sense, and then
8   the following question would be without predetermining
9   anything, if there is a stay, do the parties still believe that
10  there would be value to continuing the ADR discussion, and if
11  so, in what format.
12      **MR. BIEMER:**  Your Honor, my understanding is that the
13  parties were uniform in requesting the magistrate, other than
14  Apple, who wanted to go through the JAMS process, but I'll
15  leave that to Apple.
16      **MR. FRAHN:**  So I think actually we were unanimous in
17  requesting the magistrate.  When we couldn't reach agreement on
18  a private mediation, we -- all three cases had requested
19  assignment to a magistrate judge for settlement conference
20  mediation.
21      **THE COURT:**  Okay.  And obviously the time of our
22  magistrate judges is a precious resource.  I, on the one hand,
23  am generally inclined to accommodate the parties when they
24  think that that can result in some real progress.  On the other
25  hand, I expect it to be the kind of thing where the parties do

1    predict in good faith that they can really make some strides if
2    we invest the time and guidance of a magistrate judge.
3         Given that, what do the parties think about the -- without
4    holding anyone to a prediction of future events, but what's the
5    likelihood that a magistrate judge could really help the
6    parties move the ball, and would that proceed even if there
7    were a stay in the case?
8         **MR. BIEMER:**  Your Honor, I think that we will have a
9    lot more clarity after January 2nd when the PTAB is going to
10   rule, and I suspect that if the PTAB were to take all the
11   patents and all the claims, that we would be in a very
12   different position than if, for example, they took two of the
13   patents but not the first patent, the '033 patent.  So I think
14   that we'll have a much clearer vision at that time.
15        **MR. FRAHN:**  Right.  I agree with that, Your Honor.
16   And obviously the other defendants, if they have a different
17   view, can say, but similar to a normal patent case when you
18   look towards the Markman hearing as giving a lot of input into
19   what the parties' positions are going to be, I think the PTAB
20   decision in early January will do that here, and doing a
21   mediation or anything other than informal discussions, which
22   can continue at any time, between now and early January
23   wouldn't be a good use of anyone's time.
24        **THE COURT:**  All right.  I think that makes good sense.
25        And just so the parties know, my general practice is even

1   when I stay prior to IPR initiation, I always revisit that at
2   the time when we find out what, if any, claims are accepted for
3   IPR, and that significantly can drive the likelihood of a
4   continued stay as well.
5           **MR. FRAHN:**  We had suggested, I believe, Your Honor --
6   and I can't remember if the parties had agreed or not -- but I
7   think we had suggested, were you inclined to grant a stay,
8   establishing a CMC at some later point after we know what the
9   PTAB is going to do.
10          **THE COURT:**  All right.  That also makes sense to me.
11          **MR. BIEMER:**  We're agreeable to that as well,
12  Your Honor.
13          **THE COURT:**  All right.  So that's helpful background
14  on the ADR piece of it, and I'll take the motion to stay under
15  submission.
16          **MR. FRAHN:**  Thank you, Your Honor.
17          **MR. BIEMER:**  Thank you, Your Honor.
18          **THE COURT:**  You're welcome.
19                  (Proceedings adjourned at 2:49 p.m.)
20
21
22
23
24
25

```
 1
 2
 3                    CERTIFICATE OF REPORTER
 4          I certify that the foregoing is a correct transcript
 5   from the record of proceedings in the above-entitled matter.
 6
 7   DATE:   Monday, November 30, 2015
 8
 9   _____
10   Pamela A. Batalo, CSR No. 3593, RMR, FCRR
     U.S. Court Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```